# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BOBBIE TORRY,

                Plaintiff,

v.

DREW DELFORGE and CANDACE
WHITMAN,

                Defendants.

Case No. 23-CV-975-JPS

**ORDER**

Plaintiff Bobbie Torry ("Plaintiff"), who is currently incarcerated at Fox Lake Correctional Institution ("FLCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that various defendants violated his constitutional rights. ECF No. 1. On October 4, 2023, the Court screened the complaint and allowed Plaintiff to proceed on an Eighth Amendment claim for deliberate indifference to his serious medical needs against Defendants Drew Delforge ("Delforge") and Candace Whitman ("Whitman"). ECF No. 8 at 5.

Now pending before the Court is Defendants' motion for summary judgment, filed on July 29, 2024, ECF No. 17. Plaintiff filed his opposition on August 29, 2024. ECF No. 24. On September 11, 2024, Defendants filed a reply brief. ECF No. 26. As such, the motion for summary judgment is now fully briefed and ready for disposition. As described below, the Court will deny Defendants' motion for summary judgment and this case will proceed to trial.

## 1. LEGAL STANDARD – SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

2. **FACTUAL BACKGROUND**

In compliance with the Court's order, Defendants submitted a stipulated set of joint undisputed facts, ECF No. 19, and a set of genuinely disputed facts, ECF No. 20. However, the disputed facts do not follow the Court's summary judgment protocols regarding factual submissions. *See* ECF No. 13 at 4–5 ("Each itemized, disputed fact should be supported by each party's separate pinpoint citation(s) to the record."). Although Defendants cite support for their own positions, there are no citations supporting Plaintiff's assertions. *See* ECF No. 20. The Court understands that Plaintiff may not have provided support in the record for his position; however, if that was the case, it should be clearly indicated in future filings. Nonetheless, the Court has carefully reviewed Plaintiff's submissions to determine whether there is support in the record for his disputes. To the extent that there is no support in the record for a purported dispute, the Court has treated these facts as undisputed for the purposes of summary

judgment. *See* Fed. R. Civ. P. 56(e)(2). As such, the Court takes the following facts from the parties' statement of undisputed facts, except where explicitly noted.

### 2.1 Parties

Plaintiff has been housed at FLCI since May 11, 2017. Delforge is licensed to practice dentistry in the state of Wisconsin and has been licensed continuously since June 26, 1990. Delforge was employed by the Wisconsin Department of Corrections ("DOC") as a Dentist in the Dental Services Unit from June 21, 2020 to July 5, 2024. From June 21, 2020, through February 11, 2023, Delforge was a dentist at FLCI in addition to covering dental units at Dodge Correctional Institution, Jackson Correctional Institution, Oakhill Correctional Institution, Prairie du Chien Correctional Institution, and Wisconsin Secure Program Facility due to staffing shortages. From February 12, 2023, to July 5, 2024, he was employed by the DOC as a Dentist at Oakhill Correctional Institution and Columbia Correctional Institution. From Delforge's recollection, he worked at FLCI most days of the week from June 21, 2020, to February 11, 2023, while also covering other Correctional Institutions and providing dental treatment to those patients. From June 21, 2020, to February 11, 2023, Delforge was the only person covering FLCI.

Whitman has been licensed as a registered nurse in the State of Wisconsin since 2009. Whitman is currently employed by the DOC as the Health Services Manager ("HSM") at FLCI. Whitman was promoted to this position on July 26, 2016.

### 2.2 Dental Unit in Corrections

As a dentist at DOC, under the clinical and administrative supervision of the Dentist Supervisor and the general supervision of the

Dental Director, Delforge was responsible for the practice of general dentistry within the applicable standard of care; all matters relating to professional judgment; the operation and maintenance of an efficient dental unit in delivering quality and cost-effective dental care with a humane approach; and all matters that promote improved dental health in inmate patients. Some of Delforge's clinical duties included the performance of available procedures such as diagnostic, preventive, restorative, periodontics, endodontic, prosthodontic, adjunctive, emergency, and oral surgery procedures. In addition, Delforge referred patients who required specialized or complex treatment to community specialists. He examined, evaluated, and monitored dental disease and function, and he also provided dental health education to patients.

An inmate may request dental care in prison by submitting a DSR. Only dentists are qualified to triage DSRs, and the dentist assigns a specific wait list category to each request: urgent, essential, routine, prosthetic, and hygiene. The "routine wait list" is designated for dental conditions such as cavities, broken or cracked fillings, restorative care, or other dental treatment where delay in treatment would not result in a serious health risk or discomfort to the patient. Patients on the routine wait list are typically seen within forty weeks. The "teeth cleaning or hygiene wait list" is separate from the routine wait list and is reserved for services rendered by the dental hygienist, including initial cleanings and annual cleanings. The hygienist is the primary care provider of periodontal care, including treatment of gingivitis and periodontitis, meaning gum disease. Patients on the teeth cleaning or hygiene wait list are typically seen within a year to eighteen months.

The "essential wait list" is reserved for a patient with a dental condition which is chronic, asymptomatic and which, if not completed within 8 weeks, could result in an acute episode. Examples of dental conditions that could sometimes lead to an acute episode, but not always, include advanced caries (cavities), teeth with hopeless prognosis, infected teeth, and care for patients which is relevant to their chronic medical condition. Patients on the essential wait list are usually seen within eight weeks. The "urgent wait list" is reserved for same-day treatment of patients where delay would result in increased morbidity or mortality, including jaw fracture and objective evidence of spread of infection to the structures beyond the mouth. Patients on the urgent wait list are usually seen within forty-eight hours. "Urgent or emergency care" is necessary when a patient has an acute infection (with swelling), bleeding (post extractions), and a traumatic fracture or injury to his teeth, face or jaw, including a life-threatening condition. Generally, urgent dental issues are brought to the DSU's attention by security or health services staff, and not through a DSR.

### 2.3    Dental Care at FLCI

FLCI houses 1,300 inmates. FLCI offers all patients dental services that are considered essential dental care, consistent with state public benefit programs. Essential dental care generally includes an oral evaluation that is problem-focused; diagnostic imaging; tooth extractions; and emergency dental care to address pain, acute infection, swelling, or trauma. It is not designed or expected to be comprehensive. Inmates are informed that if they need to see dental staff immediately (emergency-type situations), they need to alert unit staff of their problem or concern. FLCI's DSU receives between ten to twenty-five dental services requests from inmates on a typical day. These requests are then divided into the five categories

previously described. The institution shall make available only those routine dental treatment services which are necessary to meet the patient's dental needs and to maintain the patient's health during incarceration. Non-emergency routine dental services, such as cleanings and fillings, are elective and provided when requested by the inmate and/or when determined clinically appropriate by the treating dentist and are provided on a priority basis after all urgent and essential dental needs within the facility have been treated.

Routine requests include dental conditions that are asymptomatic and for which a delay in completion of up to one year would not result in serious risk. Examples include minor caries (cavities) or old but serviceable fillings. Essential routine requests include dental conditions which are chronic, asymptomatic, and which if not completed within six to eight weeks, could result in an acute episode. Examples include advanced caries (cavities) that cannot be restored by fillings alone, teeth with hopeless prognosis, infected teeth, and care for patients which is relevant to their chronic systemic medical conditions.

Routine dental services are provided after all urgent and essential dental needs within the facility are treated. Priorities are set by wait list and treatment times, as well as the submission date of a DSR. Patients must submit a DSR in order to be placed on a particular wait list. For example, if an inmate transfers from another institution, they would be put on the respective wait list based on the day they submitted their DSR, not the day they entered the new institution. In addition to a DSR, inmates may submit a health services request to address any pain as well as attain over the counter medication through canteen. Delforge maintains that dentists shall use the patient's dental record and relevant radiographs as an aid in triage.

A patient cannot request an extraction and have a dentist blindly agree to such an extraction.[1]

The parties purportedly dispute various aspects of dental care at FLCI. Delforge maintains it was not in his practice to prescribe medications to patients without first conducting an examination. ECF No. 20 at 1. Plaintiff counters that, pursuant to his job title, Delforge *could* have prescribed medication without seeing a patient; he makes no assertion as to having any personal knowledge of Delforge's general practice. *Id.* Plaintiff's assertion does not properly address Defendants' assertion regarding Delforge's general practice. As such, the Court does not consider Defendants' assertion to be disputed for the purposes of this motion. *See* Fed. R. Civ. P. 56(e)(2).

The parties also dispute Delforge's ability to manage patient schedules and appointment times. ECF No. 20 at 1. Delforge asserts that controlling schedules and appointment times is out of his control; Plaintiff disputes this and states that providers have the ability to make these decisions. This purposed dispute, however, is not material to the Court's summary judgment decision.

### 2.4 Plaintiff's Dental Visits

During the times relevant to this suit, Delforge only examined Plaintiff once, on November 9, 2021. Delforge personally responded to three of Plaintiff's DSRs on November 18, 2021, January 14, 2023, and May 4, 2023. Delforge saw Plaintiff for a periodic exam (X-Rays and comprehensive

---

[1]Defendants list this fact as disputed; however, their submitted fact fails to identify any dispute. *See* ECF No. 20 at 4. The Court presumes that the parties dispute whether Delforge had to physically examine Plaintiff prior to determining if a tooth needed to be pulled.

exam) on November 9, 2021. Delforge noted that Plaintiff presented with no pain but complained that his removable partial denture did not fit. In his examination, Delforge noted that Plaintiff would probably need an extraction for his #16 tooth, or the upper left wisdom tooth, in the future, and that if Plaintiff wanted a replacement removable partial denture, he would need an extraction of #16. Delforge also noted Plaintiff had defective restorations and grade 3 periodontal disease present. Plaintiff and Delforge discussed the need for better daily home care and annual cleanings.

Delforge instructed Plaintiff that his next visit was to be scheduled as a hygiene visit or per DSR. In his notes, Delforge recommended Plaintiff submit a DSR for extraction of the #16 tooth, which would have been categorized under an essential appointment. Extraction of the #16 tooth was required for Plaintiff to be placed on the prosthetic wait list. At the November 9, 2021, appointment, Delforge did not feel that Plaintiff's #16 tooth was serious enough to warrant immediate extraction. Regardless, immediate extraction is difficult because it requires administering anesthesia. For example, if patients are not compliant with their medication, or if they are hypertensive beyond normal parameters, Delforge cannot administer anesthesia. Because Plaintiff did not complain of pain, Delforge did not prescribe pain medication. Had he been put on the essential wait list, Plaintiff would have been seen within eight weeks. If he wasn't put on the essential wait list, it was an oversight by the dental assistant. Delforge notated that Plaintiff was to be put on the essential wait list on November 18, 2021; however, Plaintiff was not put on the essential wait list. The parties dispute who is at fault for Plaintiff's omission from the list. ECF No. 20.

On November 16, 2021, Plaintiff was seen for a hygiene visit. These visits are conducted with dental hygienists and not dentists. Oftentimes,

hygiene appointments and exams do not take place on the same day because of dental hygienists and dentist's schedules. On November 18, 2021, Delforge received a DSR from Plaintiff, stating, "Torry gotten [sic] his teeth cleaned on 11/16/2021. Will need a small tooth pulled down the road and will need new pair of dentures as well." On November 18, 2021, Delforge responded that Plaintiff was placed on the essential and teeth cleaning wait lists for the next year and told Plaintiff that he needed his tooth out to be eligible for new dentures.

Based on the November 18, 2021 submitted DSR, Delforge notated that Plaintiff would be placed on a list for extraction and teeth cleaning for next year. In this request, Plaintiff did not complain he was in pain, nor did he request pain medication. Delforge did not receive any DSRs from Plaintiff in 2022. Nor did Plaintiff did not submit any DSRs to DSU between November 18, 2021, and January 14, 2023. Delforge only becomes aware of a patient's complaints if they compose a DSR, HSR, or information request that are forwarded to him.

On January 14, 2023, Delforge received a DSR from Plaintiff, stating, "This is my 3rd dental request I have been waiting over 1 year too [sic] have my bottom tooth pulled out (my tooth hurt) and new pain medication." Delforge responded on January 17, 2023, "Mr. Torry, on list for cleaning and extractions; upper left was loose at EX (11/9/21). Will evaluate at appointment, THANKS!" Delforge also placed Plaintiff on the regional oral surgery list. Therefore, solely based on the January 14, 2023, DSR, Delforge could not determine if it was necessary to extract that tooth as he did not previously identify it as having any problems.

When Delforge put Plaintiff on the regional oral surgery list and essential waitlist, it was for his #16 tooth. DOC used to have a dentist who

travelled the region to perform extractions to help streamline the efficiency in treating inmates. If Delforge saw that the regional oral surgery wait list was shorter than the essential wait list, he would put the patient on both lists so they could be seen quicker. The regional oral surgery list was eliminated sometime in 2023. Without x-raying and examining Plaintiff, Delforge could not have known that his #30 tooth was emergent. And to be able to examine Plaintiff, he needed to be placed on the essential waitlist.

On February 12, 2023, when Delforge was assigned to work in other DOC facilities, he still provided very limited coverage to FLCI as DSU remained short staffed. On May 2, 2023, Plaintiff dated a DSR, stating, "Need bottom tooth pulled out!!! Hole in tooth. Back in November (2021) i have been waiting to have my bottom tooth pulled out it (may 2023) my tooth hurts waiting 1 ½ years now!" Delforge responded on May 4, 2023, "Mr. Torry, scheduled for both cleaning and extraction in near future. Days are different. Cover multiple facilities, THANKS!" Delforge placed Plaintiff on the oral surgery waitlist and teeth cleaning.

On May 4, 2023, Plaintiff was supposed to be seen for a prophylaxis exam. Plaintiff signed a refusal of recommended health care form as he wanted an extraction. Plaintiff alleges that he submitted a DSR on June 13, 2023. However, DSU did not receive a DSR from Plaintiff on or around June 13, 2023. On June 19, 2023, Plaintiff was seen for an evaluation with Dr. Steven Kinziger. Plaintiff complained of pain, level 4, in the left molar. Upon examination, Dr. Kinziger noted that the #30 tooth, a bottom right molar, had deep mesio-occlusal decay and distal decay. Dr. Kinziger extracted #30. Plaintiff told Dr. Kinziger that he wanted partials, and Dr. Kinziger suggested submitting a DSR for cleaning.

In Plaintiff's November 9, 2021, periodic exam, Dr. Delforge noted that Plaintiff's #30 tooth had an existing restoration. Had he believed that Plaintiff's #30 tooth needed to be extracted, Dr. Delforge would have noted it in Plaintiff's chart. Though Delforge cannot attest to Dr. Kinziger's judgement, based on his notes, Delforge can guess that the decay in Plaintiff's #30 tooth must have been so deep that it may have resulted in an abscess, which would warrant an immediate extraction. To be eligible for replacement partials, patients must be current on their cleanings and have all fillings done, necessary extractions removed, and surgical sites healed.

On August 20, 2023, the DSU received a DSR from Plaintiff to be put on the list for teeth cleaning. Plaintiff was put on the wait list for teeth cleaning. On January 10, 2024, Dr. Kinziger received a DSR form from Plaintiff stating, "There is an [sic] hole inside the side of my tooth. Need filling to save tooth. Soon as possible need pain medication for tooth ach [sic]." Dr. Kinziger responded, "Wait list for filling. Waits are over a year for fillings and they are only done in the order you were put on the list. If pain is severe, request extraction; you will be seen sooner for that." Dr. Kinziger noted that a review of Plaintiff's dental chart yielded no signs of decay. While it may seem simple to just extract a tooth during a routine exam, administration of anesthesia can be a challenge. For example, if patients are not compliant with their medication or are hypertensive outside of parameters, then it the extraction would need to be rescheduled.

Over the counter pain medications, such as Aspirin, Tylenol, and Ibuprofen are available for purchase through canteen. ECF No. 20. Plaintiff did purchase medication through canteen from November 2021 to January 2024. *Id.* Plaintiff maintains that these medications were used to alleviate his back pain. *Id.*

### 2.5    HSM Whitman's Role

As the HSM, Whitman provides overall administrative support and direction of the health services unit, working with the advanced care providers and specialists in a collaborative manner to provide quality health care at FLCI in an efficient and effective manner. Whitman supervises medical assistants, licensed practical nurses, and registered nurses. Physicians, psychiatrists, physical therapists, dentists, optometrists, nurse practitioners, dental hygienists, and dental assistants are all supervised by the Medical Director within the Bureau of Health Services.

Whitman does not routinely see patients for examination and treatment. Whitman only becomes involved with inmate patient care if she is notified of an issue by her staff; if the inmate patient sent correspondence to Health Services Unit ("HSU") that was forwarded to her by the nurse; if Whitman was covering staff nursing duties for a shift; or if there was a formal Inmate Complaint submitted through the Inmate Complaint Review System. However, even if appraised of a patient's medical concerns, as the HSM, Whitman was not in a position to treat that patient because she was not an Advanced Care Physician and therefore, she was not licensed to independently practice medicine outside of the use of nursing protocols and following prescriber's orders. Moreover, dentistry is a highly specialized profession to which she was not trained. Whitman is not licensed or trained to extract teeth. Plaintiff disputes that Whitman does not have the authority to prescribe medication or determine a plan of care and that Whitman does not have authority over dental services at FLCI. ECF No. 20. Plaintiff's disputes, however, do not properly address Defendants' assertions regarding Whitmans authority. As such, the Court does not

consider these facts to be disputed for the purposes of this motion. *See* Fed. R. Civ. P. 56(e)(2).

All housing units have a box for inmates to drop off their HSU, dental, and psychological requests. Only HSU staff has access to these boxes. HSU encourages inmates to use the correct form (such as Health Services Requests), but it is not uncommon that inmates use the wrong form, such as Information Requests for medical concerns. Regardless of whether inmates use the correct form, HSU will treat the request the same. When HSU staff reviews inmate requests, HSU staff stamps the requests on the date they are received, reviews them, and triages them to the correct person or unit. Similarly, in HSU's review of Information Requests, HSU stamps the received date, writes a comment, and signs off on the bottom.

Plaintiff submitted an Information Request that was received by the Institutional Complaint Examiner on December 21, 2022 with FLCI 2022-18934. ECF No. 20. Whitman maintains the Information Request was not forwarded to her and Whitman was not made aware of it. *Id.* Plaintiff disagrees and states that Whitman's involvement is documented in FLCI-2022-18934 *Id.* The Information Request dated December 14, 2022, states that Plaintiff put in a request on November 18, 2021, to have his small tooth pulled. ECF No. 23-2 at 14. It further provided that Plaintiff had been waiting over a year, that his tooth hurt, and that he had put in another dental request with no response. *Id.* The Information Request that Plaintiff submitted to the Institutional Complaint Examiner did not have any comments or date stamp from HSU, nor did anyone from HSU sign it. Although Plaintiff disputes this assertion, the document in the record does not have any HSU date stamp or signature. *See id.* Plaintiff's December 21, 2022 inmate complaint includes that Plaintiff sent communication to

Whitman about his dental problems and that Whitman did not respond. ECF No. 23-1 at 12.

Whitman maintains that had she received a request for dental care, she would have reviewed the request for urgent needs. If she determined a timely assessment was needed, Whitman would have scheduled an appointment with nursing either the same day or the next. If the request was non-urgent, Whitman would have forwarded the request to dental to be reviewed and addressed, as Whitman is not a dental provider nor is she well versed in dental problems or treatment.

**3.    ANALYSIS**

Defendants brought a motion for summary judgment seeking dismissal of the Eighth Amendment claim for deliberate inference to a serious medical need. ECF No. 20. Defendants argue that the undisputed facts show that Delforge and Whitman were not deliberately indifferent to Plaintiff's medical needs. ECF No. 21. Defendants further argue that they are entitled to qualified immunity. *Id.* Based on the Court's review of the parties' submissions, and for the reasons explained below, the Court will deny Defendants' motion for summary judgment and this case will proceed to trial.

To prove that Defendants violated his rights under the Eighth Amendment, Plaintiff must present evidence establishing that he suffered from "'an objectively serious medical condition'" and that Defendants were "'deliberately, that is subjectively, indifferent'" to that condition. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)). A prison official shows deliberate indifference when he or she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez*

*v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"'A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)). A broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit. *Id.* at 861 (citing *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (collecting cases)). On the other hand, a prison medical staff "that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (1997) (quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)).

Under the Eighth Amendment, an incarcerated person does not have the right to direct his own course of treatment. *See Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015). Likewise, an incarcerated person's disagreement "about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)). But neither may prison officials "doggedly persist[ ] in a course of treatment known to be ineffective." *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). To defeat Defendants' motion for summary judgment, Plaintiff must present evidence showing the treatment he

received was "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' his condition." *Id.* at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did[.]" *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016)) (alterations in original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment where the treatment is known to be ineffective but is chosen anyway. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

Finally, "[a] delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the

seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640). To prevail on an Eighth Amendment claim alleging a delay in providing treatment, the plaintiff "must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Petties*, 836 F.3d at 730–31. Such evidence may include a showing in the plaintiff's medical records that "the patient repeatedly complained of enduring pain with no modifications in care." *Id.* at 731; *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007).

Here, and as to the first prong, the Seventh Circuit has repeatedly held that tooth decay, dental pain, and other dental conditions potentially involving infection can constitute a serious medical need. *See, e.g., Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940-41 (7th Cir. 2015); *Berry*, 604 F.3d at 440. Defendants do not suggest that Plaintiff did not have a serious medical need. As such, the Court is satisfied that Plaintiff's need for dental care constituted a serious medical need.

Second, the Court finds that a reasonable juror could find that Delforge and Whitman were deliberately indifferent to Plaintiff's need for dental treatment. The Court begins with the well-established rule that when considering claims of deliberate indifference, the Court must give deference to a medical professional's judgment regarding treatment decisions. Federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment. *Roe,* 631 F.3d at 857; *Sain,* 512 F.3d at 895. "But deference does *not* mean that a defendant automatically escapes liability any time he invokes professional judgment as the basis for a treatment decision."

Case 2:23-cv-00975-JPS    Filed 02/12/25    Page 17 of 23    Document 27

"When the plaintiff provides evidence from which a reasonable jury could conclude that the defendant didn't *honestly* believe his proffered medical explanation, summary judgment is unwarranted." *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016) (emphasis in original).

Here, the Court finds that a reasonable jury could find that Delforge and Whitman were deliberately indifferent to Plaintiff's serious dental needs. The Court addresses Delforge's involvement separately because it differed significantly from Whitman's. First, the Court does not find that the record supports a finding of Delforge's deliberate indifference as to the time period between November 16, 2021 and January 2023. Even assuming the facts in the light most favorable to Plaintiff and that Delforge was responsible for placing Plaintiff on the list for emergent care, his failure to do so shows at most negligence. The undisputed record shows that Delforge responded to Plaintiff that he would be placed on the list. Delforge did not hear from Plaintiff again until January 2023. Nothing in the records suggests the failure to place Plaintiff on this list was anything more than an accident. Plaintiff did not contact Delforge or anyone else for over a year and nothing in the record suggests Delforge knew Plaintiff had not received his recommended treatment as a result of that error.

Delforge's knowledge of Plaintiff's situation, however, changed on January 14, 2023, when he received a DSR from Plaintiff, stating, "This is my 3rd dental request I have been waiting over 1 year too [sic] have my bottom tooth pulled out (my tooth hurt) and new pain medication." ECF No. 19 at 8. This DSR put Delforge on notice that Plaintiff had been waiting for over a year for an extraction, that his tooth hurt, and that he needed new pain medication. Delforge responded on January 17, 2023, "Mr. Torry, on list for cleaning and extractions; upper left was loose at EX (11/9/21). Will

evaluate at appointment, THANKS!" *Id.* Delforge placed Plaintiff on the regional oral surgery list but took no action to address Plaintiff's pain or to reevaluate his placement on the wait list. Delforge again became aware of Plaintiff's pain from Plaintiff's May 2, 2023 DSR stating, "Need bottom tooth pulled out!!! Hole in tooth. Back in November (2021) i have been waiting to have my bottom tooth pulled out it (may 2023) my tooth hurts waiting 1 ½ years now!" *Id.* at 9. Delforge responded on May 4, 2023, "Mr. Torry, scheduled for both cleaning and extraction in near future. Days are different. Cover multiple facilities, THANKS!" *Id.* Again, Delforge took no action to address Plaintiff's pain or to reevaluate his need to be seen quicker.

Defendants assert that Plaintiff received "extensive care and attention for his tooth pain." ECF No. 18 at 12. A reasonable jury, however, could certainly conclude otherwise based on the long delays in treatment. Defendants rely on the fact that the length of delay in care was minimal because Delforge did not work at FLCI after February 12, 2023. ECF No. 21 at 9. The Court finds, however, that disputed facts exist as to whether Delforge had the ability to treat Plaintiff after he 'left' FLCI. Despite being reassigned to another DOC facility, Delforge responded to another DSR from Plaintiff on May 2, 2023. Who, if not Delforge, was supposed to address Plaintiff's need for treatment? A reasonable jury could infer from these facts that Delforge had the ability to treat Plaintiff or at least take some action to refer his request to another provider, even though Delforge was formally assigned to another prison. Taking the facts in the light most favorable to Plaintiff, Delforge had knowledge that Plaintiff suffered from dental pain for multiple months, and he took zero action to address Plaintiff's pain or to reevaluate his placement on the wait list. As such, a reasonable jury could find that Delforge was deliberately indifferent to

Plaintiff's dental needs. *See Bentz v. Ghosh*, 718 F. App'x 413, 417–18 (7th Cir. 2017) (finding a genuine issue of material fact existed as to whether prison dentist was aware that inmate's pain was significant); *Shaw v. Delforge*, No. 23-CV-1015-BHL, 2024 WL 4650882, at *7 (E.D. Wis. Nov. 1, 2024) ("[W]hether [the defendant doctors'] refusal to move [the plaintiff] to a higher priority list or provide him with pain medication was based on a good-faith belief that he was malingering is an issue for the jury.").

Next, the Court finds that a reasonable jury, when taking all facts in the light most favorable to Plaintiff, could find that Whitman was deliberately indifferent to Plaintiff's serious need for dental treatment. There is a question of fact as to what Whitman knew about Plaintiff's condition following Plaintiff's December 14, 2022 Information Request. Whitman maintains she never saw the Information Request and had no knowledge of Plaintiff's need for care. While Plaintiff cannot, of course, definitively dispute what Whitman did or did not know, circumstantial evidence at least suggests she may have received the request and ignored it. Plaintiff maintains he sent Whitman this request; his assertion is further supported by the December 21, 2022 inmate complaint that references his communication to Whitman. A reasonable jury could therefore conclude that Whitman saw the request and simply ignored it. *See Horshaw v. Casper*, 910 F.3d 1027, 1029–30 (7th Cir. 2018) (reversing district court and finding a factual issue for the jury when the defendant's entire defense was that he did not receive the plaintiff's note). The record is clear that Whitman is not a dentist and could not have prescribed him medication; however, Whitman herself acknowledges that, had she seen the Information Request, she would have reviewed it for urgent needs and either scheduled a visit with dental or an emergency appointment the same day or the next if

needed. Assuming Whitman saw the request and did absolutely nothing to address Plaintiff's pain that had gone unaddressed for over a year, a reasonable jury could find Whitman to be deliberately indifferent to Plaintiff's dental needs.

In sum, when taking the facts in the light most favorable to Plaintiff, the Court finds that a reasonable jury could find that both Delforge and Whitman were deliberately indifferent to Plaintiff's serious need for dental care. As such, the Court will accordingly deny Defendants' motion for summary judgment on the merits.

Finally, the Court also concludes that Defendants are not entitled to qualified immunity at this stage in the litigation. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a court reviews a defendant's motion for summary judgment based on qualified immunity, the court considers "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at [that] time." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (citing *Pearson*, 555 U.S. at 232); *Estate of Clark v. Walker*, 865 F.3d 544, 549–50 (7th Cir. 2017).

Here, as outlined above, "[t]he general standard for liability under the Eighth Amendment for refusal to treat a serious medical condition was well-established at the time of these events." *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002). As in many cases brought under the Eighth Amendment, "[t]he uncertainty in this case is factual," not legal. *See*

*Horshaw,* 910 F.3d at 1030. And as the Court already explained, the evidence viewed in the light most favorable to Plaintiff could allow a jury to find Defendants were deliberately indifferent to Plaintiff's dental needs. As such, the Court finds that Delforge and Whitman are not entitled to qualified immunity. *See Chilcutt v. Santiago*, No. 22-2916, 2023 WL 4678583, at *3 (7th Cir. July 21, 2023) ("[A] district court properly denies a motion for summary judgment based on qualified immunity when the facts, viewed in the light most favorable to the plaintiff, create a genuine dispute about whether the defendants' actions violated a clearly established constitutional right.") (citing *Estate of Clark*, 865 F.3d at 551).

**4.    CONCLUSION**

For the reasons explained above, the Court denies Defendants' motion for summary judgment and this matter will proceed to trial. The Court will enter a trial scheduling order in due course. Should the parties seek to continue settlement discussions with the help of a magistrate judge, they must jointly make any such request in a timely fashion.[2]

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment, ECF No. 17, be and the same is hereby **DENIED**.

---

[2]Defendants seek to strike Plaintiff's references to the parties' settlement discussions. ECF No. 26 at 10. Defendants have not provided any authority regarding striking inadmissible evidence from the record. The Court notes, however, that it has not considered any settlement discussion in its summary judgment decision. Defendants may raise the issue of admissible evidence at trial during the normal course of motions *in limine*.

Dated at Milwaukee, Wisconsin, this 12th day of February, 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge